IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

BANK OF AMERICA, N.A.,                  )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )   No. _____
                                        )
ASSOCIATED BANK, N.A.,                  )
BROE DEBT HOLDINGS, LLC, and            )
NORTHPARK SB1, LLC                      )
                                        )
        Defendants.                     )

## COMPLAINT
## FOR DECLARATORY JUDGMENT

Plaintiff Bank of America, N.A. ("BoA") for its Complaint seeking declaratory and other relief pursuant to 28 U.S.C. §2201 against defendants Associated Bank, N.A. ("Associated"), Broe Debt Holdings, LLC ("Broe") and Northpark SB1, LLC ("SB1") states:

### NATURE OF THE CLAIM

1.      In this action, BoA seeks a judgment pursuant to 28 U.S.C. §2201 declaring that Associated has breached its contractual obligations by assigning its interest in a Loan Agreement to Broe and/or SB1 in violation of a provision requiring BoA's consent and by intentionally altering a form of assignment document to remove provisions requiring BoA's consent. Further, BoA seeks a declaration that while the purported assignment may be effective insofar as Broe and/or SB1 may have been assigned rights to receive payment of their pro-rata share of monies loaned under the Loan Agreement, BoA is not required to secure consent and/or approval from Associated, Broe or SB1 in exercising its discretion as Administrative Agent to waive or modify the terms of the underlying loan documents or relationship. Finally, pursuant to Fed.R.Civ.P. 57, BoA also requests a speedy hearing on this request for declaratory relief.

**PARTIES**

2.      BoA is a national banking association organized and existing under the laws of the United States, and it is a citizen of the State of North Carolina, having its principal place of business in Charlotte, North Carolina. BoA is qualified to do business in the State of Missouri, and it is the successor in interest by merger and acquisition to LaSalle Bank, N.A. ("LaSalle").

3.      Associated is a national banking association organized and existing under the laws of the United States, and it is a citizen of the State of Wisconsin, having its principal place of business in Green Bay, Wisconsin.

4.      Broe is a limited liability company organized under the laws of the State of Delaware and having its principal place of business in the State of Colorado. Upon information and belief, none of the members of Broe are citizens of the State of North Carolina.

5.      SB1 is a limited liability company organized under the laws of the State of Delaware and having its principal place of business in the State of Colorado. Upon information and belief, none of the members of SB1 are citizens of the State of North Carolina.

6.      Broe and SB1 are affiliated, and neither is a commercial bank nor financial institution, in that neither is authorized to do business under state or federal laws relating to financial institutions, banks, trust companies, savings banks, building and loan associations, savings and loan companies or credit unions. Instead, Broe and SB1 are private investment and management companies and venture capitalists, which acquire, develop and manage real estate, own and operate transportation assets, and explore energy and natural resources.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because BOA is a citizen of a state different than Associated, Broe and SB1 and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     This Court has personal jurisdiction over Associated (i) because, as more fully alleged below, it expressly agreed to be bound by a Loan Agreement containing a forum selection clause under which the parties agreed that this Court or the Missouri Circuit Courts of St. Louis County would have jurisdiction over it, and (ii) because it entered into a contract and transacted business in the State of Missouri.

9.     This Court has personal jurisdiction over Broe and SB1 (i) because they have transacted business and entered into contracts in the State of Missouri, and (ii) because the acts alleged herein occurred within the State of Missouri and affects citizens of the State of Missouri.

10.     Venue is proper in this Court pursuant to the aforementioned forum selection clause of the Loan Agreement and pursuant to 28 U.S.C. §§ 1391(a)(3) and 1391(c).

## THE LOAN AGREEMENT AND THE ASSOCIATED ASSIGNMENT

11.     On September 13, 2006, BOA's predecessor in interest, LaSalle, entered into a Construction Loan Agreement ("Loan Agreement") with Northpark Partners, LLC ("Northpark"), a Missouri limited liability company, engaged in the business of developing real estate.   The Loan Agreement, together with certain agreed to modifications, governed an arrangement wherein LaSalle, on behalf of itself and as Administrative Agent for other Lenders, would extend approximately $63 million in loans to Northpark for development and improvements on certain real estate located in St. Louis County, Missouri.   A true and correct

copy of the Loan Agreement, together with the exhibits, schedules and modifications thereto, is attached hereto as Exhibit 1 and incorporated herein by reference.

12.     As successor in interest by merger and acquisition to LaSalle, and by virtue of a Fourteenth Modification to the Loan Agreement, BoA assumed all rights and liabilities of LaSalle under the Loan Agreement, and BoA presently acts as Administrative Agent thereunder.

13.     As Administrative Agent, BoA manages the Loan Agreement and has the power and authority to amend or waive certain obligations of the borrower, Northpark, under the Loan Agreement, except that §15.2(b) of the Loan Agreement precludes BoA from taking certain "actions without the prior approval or consent of each Lender" to amend or modify the underlying loan documents or relationship, including but not limited to extending the maturity date, extending any payment due dates, releasing collateral for the underlying loans or amending the development documents.

14.     On October 19, 2006, for good and valuable consideration, Associated entered into two substantially identical "Assignment and Acceptance" agreements wherein it assumed obligations as a Lender under the Loan Agreement and committed to funding approximately $20 million of the monies committed under the Loan Agreement and received rights related thereto, including the right to repayment of its pro rata share of the monies loaned when repaid by the borrower or otherwise received, together with interest, and the right to consent and approve of certain fundamental modifications of the loan relationship as set forth in §15.2(b) of the Loan Agreement.   The two Assignment and Acceptance agreements are hereinafter collectively referred to as the Associated Assignment, and true and correct copies thereof are attached hereto as Exhibit 2 and Exhibit 3 and incorporated herein by reference.

15.    In the Associated Assignment, Associated expressly agreed to be "bound by the provisions of the Loan Agreement and [to] perform in accordance with its terms...."

16.    Article XII, §12.1 of the Loan Agreement provided that Lenders under the Loan Agreement "may, *with the prior written consent of Administrative Agent*, at any time assign and delegate to one or more commercial banks or other financial institutions ... all or any fraction of such Lender's commitment...." (emphasis added). Any such assignment required the Lender and assignee to execute and deliver to the borrower, Northpark, and the Administrative Agent, BoA, a "form of Assignment and Acceptance" agreement which required the signature of the Administrative Agent and which form was appended to the Loan Agreement as Exhibit N.

### ASSOCIATED'S NON-CONSENSUAL ASSIGNMENT TO SB1 AND BROE

17.    In June 2010, Associated and Broe requested that BoA consent to an assignment to Broe of Associated's rights and obligations as Lender under the Loan Agreement and the Associated Assignment.

18.    BoA advised Associated that it would not consent to such an assignment.

19.    BoA's reasons for refusing such consent, included each of the following:

a.    Broe was not a commercial bank or financial institution as required under §12.1(a) of the Loan Agreement.

b.    Further, under §15.2(b) of the Loan Agreement, any consensual assignment would result in Broe being considered a Lender and require BoA to secure Broe's prior consent or approval to certain modifications of the underlying loan documents or relationship, including extending the maturity date, extending any payment due dates, releasing collateral for the underlying loans or amending the development documents. Requiring BoA to secure such approval from Broe would materially affect

the rights and liabilities of BoA and other Lenders under the Loan Agreement in each of the following respects:

    i.  First, Broe is not a commercial bank or financial institution.  Commercial banks and financial institutions are heavily regulated and monitored and have business interests and make business decisions accordingly.  For instance, a commercial bank or financial institution would likely consent to or approve of a modification of the underlying loan documents or relationship which resulted in maintaining or returning the subject loans to performing status, but resulted in a low cash yield or delayed repayment. On the other hand, an entity such as Broe might not find this agreeable given its differing business interests.

    ii.  Second, Broe has interests as a real estate developer and venture capitalist. Accordingly, instead of basing decisions on management of the Loan Agreement as would a traditional bank creditor, Broe would likely base its decisions on its interests as a real estate developer and investor.  For instance, Broe might prefer foreclosure over extending a maturity date, in that a foreclosure could eliminate a competitor and make the underlying real estate available to it for purchase at a distressed foreclosure sale price.

    iii.  Third, upon information and belief, Associated was intending to assign its interests as Lender under the Loan Agreement to Broe for a substantial discount.  Accordingly, Broe's risk and its interests as Lender under the Loan Agreement would be substantially less than BoA and the other Lenders which are at risk for the full amount of the monies loaned.

Because of this diminished risk, Broe's decision-making could deviate from that of Lenders and BoA, which are 100% at risk. For instance, Broe might refuse to consent to an extension of a maturity or payment date in order to force foreclosure, thereby eliminating a competitor, receiving substantially all or all of its investment back through a foreclosure sale, which could likely leave a loss which would be suffered by BoA and other Lenders, but not Broe, because of its discounted purchase price.

iv. Fourth, any consensual assignment would provide a potential competitor of the borrower, Northpark, with access to confidential information and provide Broe with a measure of control over the borrower's business and development, potentially harming the borrower's business and development plans, to the detriment of the borrower, BoA and the other Lenders. The provision of such information to Broe, which is not a traditional lender, but which has investment interests in competing or potentially competing enterprises could materially damage the borrower's, Northpark's, business interests and its ability to perform in accordance with the Loan Agreement and related documents, and could potentially increase the risk that Northpark would be unable to repay the monies loaned or expose BoA to claims of improper disclosure of Northpark's confidential proprietary information.

20. Consistent with the reasonable and legitimate concerns expressed above, BoA told Associated and Broe that it would consider consenting to the assignment if Broe would not

receive approval and consent rights under §15.2(b) of the Loan Agreement.  Broe refused this condition.

21.     Notwithstanding BoA's stated objection to any assignment, on or about June 28, 2010, Associated entered into an "Assignment and Acceptance" agreement with SB1.  The purported "Assignment and Acceptance" to SB1 is hereinafter referred to as the SB1 Assignment, and a true and correct copy of the SB1 Assignment is attached hereto as Exhibit 4.

22.     SB1 is an affiliate and alter ego of Broe.  SB1 was formed on June 18, 2010, just days before the SB1 Assignment, for the purpose of such assignment.  Indeed, shortly after the purported June 28, 2010 assignment by Associated, BoA received a notice from Broe on Broe letterhead, acknowledging that SB1 was its affiliate and stating that it had acquired the interest of Associated under the Loan Agreement "through an assignment from [Associated] of 100% of its interest" under the Loan Agreement.  A true and correct copy of that notice is attached hereto as Exhibit 5.

23.     The SB1 Assignment document is identical to the form of Assignment and Acceptance attached to the Loan Agreement as Exhibit N thereto to be used for approved and proper assignments, except that it was materially altered to remove from it any provision reflecting the requirement of acceptance by the Administrative Agent, including a paragraph conditioning such assignment upon acceptance by the Administrative Agent, BoA, and the signature block for the required acceptance by the Administrative Agent.

24.     Upon receiving notice of the SB1 Assignment, BoA immediately advised Associated, Broe and SB1 that it objected thereto and would not consent to the SB1 Assignment and that it considered same to be a breach of the terms of the Loan Agreement.

25.     On various occasions since the SB1 Assignment, BoA told Associated, SB1 and Broe that it would consider consenting to the assignment if they would relinquish approval and consent rights under §15.2(b) of the Loan Agreement.  However, they have refused.

26.     Further, a representative of Associated has told BoA that if the SB1 Assignment is ineffective to transfer rights to SB1 or Broe under §15.2(b) of the Loan Agreement, then it intended to exercise those rights according to SB1's and/or Broe's instruction.

## LEGAL GROUNDS FOR THE RELIEF REQUESTED

27.     The Loan Agreement (Exhibit 1 hereto), the Associated Assignment (Exhibits 2 and 3 hereto) and the SB1 Assignment (Exhibit 4 hereto) all provide that they are to be governed by and in accordance with the laws of the State of Missouri.

28.     The Loan Agreement and the Associated Assignment were supported by good and valuable consideration.

29.     In entering into the Associated Assignment, Associated agreed to be bound by the terms of the Loan Agreement, including the provision restricting any further assignments without first obtaining BoA's consent and approval as Administrative Agent.

30.     By entering into the SB1 Assignment without first obtaining BoA's consent, and with full awareness that BoA objected to any such assignment, Associated has breached its contractual obligations to BoA under the Loan Agreement and the Associated Assignment.

31.     Under Missouri law, an assignment in breach of a provision requiring consent is invalid (i) to the extent of any provisions of the contract which remain executory, or (ii) to the extent of any right or duty of the assignee which could materially and fundamentally affect the rights and liabilities of the obligor/non-assigning party, or (iii) to the extent such assignment

would cause a change in the personal character and interests of the party holding the rights assigned.

32.     By entering into the SB1 Assignment, Associated has purported to assign its rights under the Loan Agreement to an assignee with interests which materially and fundamentally deviate from those of BoA and other Lenders thereunder and has caused a change in the personal character and interest of the party holding the rights assigned. Specifically, any assignment to SB1, as an affiliate of Broe, of rights under §15.2(b) of the Loan Agreement is a breach of the Loan Agreement which would materially affect the rights and liabilities of BoA and fundamentally alter the personal character of the party holding those rights, in each of the following respects:

       a.     SB1 and Broe are not commercial banks or financial institutions as required under §12.1(a) of the Loan Agreement, but have interests as a real estate developer and venture capitalist. Commercial banks and financial institutions are heavily regulated and monitored and have business interests and make business decisions accordingly. For instance, a commercial bank or financial institution would likely consent or approve of a modification of the underlying loan documents or relationship which resulted in maintaining or returning the subject loans to performing status, but resulted in a low cash yield or delayed repayment. However, entities such as SB1 and Broe might not find this agreeable, given their differing business interest.

       b.     Instead of basing decisions on management of the Loan Agreement as a traditional bank creditor would, SB1 and Broe will likely base their decisions on their interests as real estate developers or investors. For instance, they might prefer foreclosure over extending a maturity date, in that a foreclosure could eliminate a

competitor and make the underlying real estate available to them or another affiliate for purchase at a distressed foreclosure sale price.

      c.     Upon information and belief, SB1 and Broe acquired their interests under the Loan Agreement for a substantial discount. Accordingly, their risk and interests as Lenders under the Loan Agreement are substantially less than BoA and other Lenders who are at risk for the full amount of the monies loaned. Because of this diminished risk, SB1's and Broe's decision-making will likely deviate from that of BoA and other Lenders, which are 100% at risk. For instance, SB1 and Broe might refuse to consent to an extension of a maturity or payment date in order to force foreclosure, thereby eliminating a competitor, receiving substantially all, or all, of their investment back through a foreclosure sale, which could likely leave a loss which would be suffered by BoA and other Lenders, and not them, because of their discounted purchase price.

      d.     Any assignment would provide a potential competitor of the borrower, Northpark, with access to confidential information and provide SB1 and Broe with a measure of control over the borrower's business and development, potentially harming the borrower's business and development plans, to the detriment of the borrower, BoA and the other Lenders. The provision of such information and control to SB1 and Broe, which are not a traditional lenders, but which have investment interests in competing or potential competing enterprises could materially damage the borrower's, Northpark's, business interests and ability to perform in accordance with the Loan Agreement and related documents, and could potentially increase the risk that Northpark will be unable to repay the monies loaned or expose BoA to claims of improper disclosure of Northpark's confidential proprietary information.

33.     Because any assignment of Associated's approval or consent rights under §15.2(b) of the Loan Agreement would materially alter the rights and duties of BoA under the Loan Agreement, and because it would cause a change in the personal character and interests of the party holding the rights assigned, Associated's breach of the non-assignment provision renders any assignment invalid and unenforceable to the extent of any approval or consent rights under §15.2(b) of the Loan Agreement.  Accordingly, neither SB1 nor Broe have standing to assert any rights under §15.2(b) of the Loan Agreement.

34.     Furthermore, Associated has forfeited and relinquished any rights which it had under §15.2(b) of the Loan Agreement (i) because it has breached material terms of the Loan Agreement, (ii) because it retained no rights by virtue of the SB1 Assignment and has relinquished all rights and interest under the Loan Agreement, (iii) because it is no longer a Lender as a result of the SB1 Assignment, (iv) because its only remaining interest in the Loan Agreement is to satisfy the concerns of SB1 to which it improperly purported to assign its rights under the Loan Agreement, and (v) because it has indicated that it would not exercise such rights in good faith, but would do so as directed by SB1 and/or Broe.

35.     Associated has refused to acknowledge its relinquishment of any rights under §15.2(b) of the Loan Agreement.

36.     SB1 and Broe have refused to acknowledge their lack of any rights under §15.2(b) of the Loan Agreement.

37.     An actual and justiciable controversy and dispute exists between BoA and Associated, Broe and SB1 regarding their rights and obligations under the Loan Agreement, Associated Assignment and SB1 Assignment.

38.     Federal Rule of Civil Procedure 57 authorizes a court to order a speedy hearing of a declaratory judgment action and to advance it on the calendar in order to secure a prompt resolution. *See Western Casualty & Surety Co. v. Herman*, 405 F.2d 121, 124 (8th Cir. 1968). Such a speedy hearing is justified here.  The facts should be essentially undisputed.  Further, BoA is anticipating immediate requests and needs to potentially modify the underlying loan documents which could possibly require Lender approval under §15.2(b) of the Loan Agreement. As such, its is important for BoA to avoid uncertainty as to defendants' rights of approval thereunder.

## CLAIM FOR RELIEF

WHEREFORE, Bank of America, N.A. prays that this Court enter its Declaratory Judgment:

A.     Declaring the purported assignment to Northpark SB1, L.L.C. invalid to the extent it purports to provide the assignee Northpark SB1, LLC, and/or Broe Debt Holdings, LLC, with any rights under §15.2(b) of the Loan Agreement to approve of or consent to modifications of the underlying loan documents or relationship and declaring that they have no such rights.

B.     Declaring that Associated Bank, N.A, by virtue of its breach of contract has forfeited any rights under §15.2 of the Loan Agreement to approve or consent to modifications of the underlying loan documents or relationship.

C.     Awarding it its costs and attorneys fees in being forced to pursue this relief.

Respectfully submitted,

**LEWIS, RICE & FINGERSH, L.C.**

By: _____
    Joseph J. Trad, #32540
    E-mail: jtrad@lewisrice.com
    Joseph E. Martineau, #32397
    E-mail: jmartineau@lewisrice.com
    R. Bradley Ziegler, #57447
    E-mail: bziegler@lewisrice.com

    600 Washington Avenue, Suite 2500
    St. Louis, Missouri 63101
    Telephone: 314/444-7729
    Facsimile: 314/612-7729

*Attorneys for Plaintiff Bank of America, N.A.*